Filed 7/9/20

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARTIN SOTO,<br><br>    Defendant and Appellant. | H047581<br>(Santa Clara County<br>Super. Ct. No. 185328) |


A jury found defendant Martin Soto guilty of second degree murder in 1996. This court affirmed that conviction in 1997.[1] Soto now appeals from a November 2019 order denying his petition to vacate his murder conviction and be resentenced under Penal Code section 1170.95.[2]

In this appeal, Soto's appointed counsel filed a brief that raised no issues pursuant to *People v. Serrano* (2012) 211 Cal.App.4th 496. Soto filed a supplemental brief on his own behalf. After reviewing the briefs and record, we requested supplemental briefing on whether the trial court erred in not issuing an order to show cause where its order denying Soto's petition relied on information drawn from the record of conviction and, if so, whether any error was harmless.

---

[1] The opinion was not published in the official reports. (*People v. Soto* (June 4, 1997, H015403) [nonpub. opn.].)

[2] Unspecified statutory references are to the Penal Code.

Upon review of the parties' supplemental briefs, we now address the merits of Soto's appeal and conclude that it fails. We therefore affirm the trial court's order denying Soto's petition to vacate his murder conviction.

## I. FACTS AND PROCEDURAL BACKGROUND

### A. *Facts of the Crime*[3]

The facts elicited at Soto's trial showed that, on the night of May 4, 1995, Danny Garcia and Kurt Hintz had an argument over money and a CD. Soto and Garcia got into a car. Soto was driving, Garcia was in the passenger seat. Garcia shot Hintz, and the car sped away. Hintz later died from the gunshot wound.

Alvin Bales, who provided information to the police in hopes of leniency in a pending drug case against him, testified that he knew Soto. Bales stated that a week after the shooting, Soto told him that Garcia had been in an argument with a man on Leigh Avenue over the man's refusal to pay Garcia. Garcia had asked Soto what to do, and Soto had responded, " 'just shoot the motherf-----.' " Garcia then shot the man.

Soto did not testify. His primary defense at trial was directed at Bales's credibility.

### B. *Jury Instructions at Soto's Trial*

At Soto's trial, the jury convicted him of second degree murder (§§ 187–189) and found true an allegation that the murder was perpetrated by means of discharging a firearm from a motor vehicle. (§ 190, subd. (c).)

In its final instructions to the jury, the trial court instructed on first and second degree murder, voluntary manslaughter, and involuntary manslaughter. The instructions on murder included definitions for express and implied malice. (CALJIC No. 8.11.) Of particular relevance to this appeal, the instructions defined implied malice as "when: [¶] 1. The killing resulted from an intentional act, [¶] 2. The natural consequences of the act

---

[3] We take these facts from this court's opinion in Soto's direct appeal. (See fn. 1, *ante*.)

2

are dangerous to human life, and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life."[4]

As to first degree murder, the trial court instructed such crime is committed if the murder was a willful, deliberate, and premeditated killing with express malice (i.e., an intent to kill) or perpetrated by means of intentionally discharging a firearm from a motor vehicle at a person outside of the vehicle when the perpetrator specifically intended to inflict death.

The jury instructions defined second degree murder as an unlawful killing manifesting an intention to kill, but without deliberation and premeditation, or an unlawful killing resulting from an intentional act, the "natural consequences" of which are "dangerous to human life" and which "was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life." (CALJIC No. 8.31.) The trial court instructed further regarding the punishment provision for second degree murder under former section 190, subdivision (c).[5]

---

[4] The full text of the instruction on malice provided: " 'Malice' may be either express or implied. [¶] Malice is express when there is manifested an intention unlawfully to kill a human being. [¶] Malice is implied when: [¶] 1. The killing resulted from an intentional act, [¶] 2. The natural consequences of the act are dangerous to human life, and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life. [¶] When it is shown that a killing resulted from the intentional doing of an act with express or implied malice, no other mental state need be shown to establish the mental state of malice aforethought. [¶] The mental state constituting malice aforethought does not necessarily require any ill will or hatred of the person killed. [¶] The word 'aforethought' does not imply deliberation or the lapse of considerable time. It only means that the required mental state must precede rather than follow the act." (Brackets omitted.)

[5] Former section 190, subdivision (c), provided: "Every person guilty of murder in the second degree shall suffer confinement in the state prison for a term of 20 years to life if the killing was perpetrated by means of shooting a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict great bodily injury." (Stats. 1993, ch. 609, § 3, as approved by voters as Prop. 179, eff. June 8, 1994; Ballot Pamp., Primary Elec. (June 7, 1994).)

With respect to first and second degree murder, the trial court did not instruct the jury that Soto could be liable for these crimes either as the natural and probable consequence of the commission of another crime or based upon the felony murder rule.

Regarding involuntary manslaughter, the trial court instructed that Soto could be found guilty of that crime if, among other things, the People proved it "was a natural and probable consequence of the commission" of "grossly negligent discharge of a firearm, exhibiting a firearm, assault with a firearm, or assault" and Soto aided and abetted such crimes committed by "[a] co-principal."[6]

In addition, the trial court instructed the jury on principles of aider and abettor liability. The instructions informed the jury that a person aids and abets the commission of a crime when he, "with knowledge of the unlawful purpose of the perpetrator" and "with the intent or purpose of committing, encouraging, or facilitating the commission of the crime, by act or advice, aids, promotes, encourages or instigates the commission of the crime."

C. *Section 1170.95 Petition*

On January 10, 2019, Soto, acting in propria persona, filed a petition for resentencing pursuant to section 1170.95 (petition). He declared that he was convicted of

---

[6] This "natural and probable consequences" instruction followed a definitional instruction for involuntary manslaughter that referenced the crimes of grossly negligent discharge of a firearm, exhibiting a firearm, assault with a firearm, or assault and separate instructions on the elements of those crimes. The "natural and probable consequences" instruction began with the following language: "One who aids and abets [another] in the commission of a crime [or crimes] is not only guilty of [those crimes], but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crime[s] originally aided and abetted." The instruction then provided four elements needed to "find the defendant guilty of the crime of involuntary manslaughter," which included, among other things, that "[t]he crime of involuntary manslaughter was a natural and probable consequence of the commission of [the specified other] crimes." This instruction did not reference first or second degree murder (only involuntary manslaughter) and, as noted, no instruction like this one was provided to the jurors for first or second degree murder.

4

second degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine and that he could not now be convicted of murder under the changes made to sections 188 and 189, effective January 1, 2019.[7]  Upon request, the trial court appointed counsel to represent Soto on his petition.

On March 11, 2019, the district attorney filed an opposition to Soto's petition. The district attorney maintained that Senate Bill No. 1437 (2017-2018 Reg. Sess.)—which added section 1170.95 and amended sections 188 and 189 (Stats. 2018, ch. 1015)—is unconstitutional.[8]  The district attorney further asserted Soto could not make the prima facie showing for resentencing required by section 1170.95, subdivision (a)(3), because he was unable to demonstrate he could not be convicted of murder under current law.  The district attorney argued that Soto was convicted of aiding and abetting murder with malice and the jury was never instructed on the natural and probable consequences or felony murder doctrine as to first or second degree murder.  Rather, the trial court had instructed the jury on the natural and probable consequences doctrine only as to the lesser offense of involuntary manslaughter.  The district attorney attached to his opposition a copy of the endorsed filed-stamped instructions provided to the jury at Soto's trial and a filed-stamped copy of this court's opinion from Soto's direct appeal.

On June 17, 2019, Soto, through his appointed counsel, filed a reply to the district attorney's opposition.  Soto maintained Senate Bill No. 1437 is constitutional, and he had satisfied the requisite prima facie showing for relief.  He argued the jury did not make an explicit finding regarding malice and implied malice was "imputed to him by his

---

[7] Soto's petition is a form petition in which he checked boxes beside preprinted, purportedly applicable statements.

[8] We note that multiple appellate courts have since upheld the constitutionality of Senate Bill No. 1437.  (See, e.g., *People v. Lopez* (June 29, 2020, No. B300787) ___ Cal.App.5th ___ [2020 WL 3496823, at *1]; *People v. Alaybue* (June 25, 2020, No. H047221) ___ Cal.App.5th ___ [2020 WL 3469122, at *8]; *People v. Johns* (2020) 50 Cal.App.5th 46, 54; *People v. Bucio* (2020) 48 Cal.App.5th 300, 306; *People v. Lamoureux* (2019) 42 Cal.App.5th 241, 246.)

participation as an aider and abettor of Danny Garcia, the actual killer of Hintz." He asserted that no evidence was presented at trial to demonstrate he had an intent to commit or to encourage or facilitate "life-endangering conduct" or "had knowledge of Garcia's lethal purpose." Further, Soto contended he "was not a direct aider and abettor, since there was no evidence he had the requisite specific intent to kill." He claimed he "was convicted as a natural and probable consequence of his participation as a facilitator in the crime."

On November 15, 2019, the trial court held a hearing on Soto's petition.[9] The trial court noted it had reviewed the pleadings, the jury instructions, and this court's opinion. The trial court said it "thought that the implied malice came from [B]ales'[s] statement about what Soto had said" and Bales's statements "satisfied the requirement or helped satisfy the requirement of malice." Declining to issue an order to show cause, the trial court concluded Soto "is ineligible for resentencing because he was convicted of murder in accordance with the current law." The trial court denied Soto's petition, and Soto has appealed that decision to this court.

D. *Proceedings in This Court*

Soto's appointed appellate counsel filed a *Serrano* brief in this court that raised no issues. Soto filed a supplemental brief in propria persona. In his brief, Soto maintains that he was prosecuted under the now invalid natural and probable consequences doctrine, citing the jury instructions regarding malice, second degree murder, and involuntary manslaughter. He further asserts that Bales's testimony was perjured and the evidence presented at his trial "simply doesn't show the needed malice or specific intent to kill" the victim.

---

[9] At the hearing, the deputy district attorney reiterated that Soto's jury had not been instructed on the natural and probable consequences doctrine as to the murder and stated the prosecution did not argue at Soto's trial for liability for murder based on the natural and probable consequences doctrine. The deputy district attorney stated that she provided a copy of the closing argument to Soto's counsel but not the trial court.

Upon this court's request, appellate counsel and the Attorney General filed supplemental briefs on the questions described *ante*. Having reviewed the supplemental briefs, we now address the merits of Soto's appeal.

## II. DISCUSSION

Soto contends the trial court erred when it relied on facts gleaned from this court's 1997 opinion to deny his petition. He further contends the error is not harmless because he was in fact convicted as an aider and abettor of murder on a natural and probable consequences theory and could not be convicted of murder on that basis under current law. He thus asks us to reverse the denial of his petition and remand the case for an evidentiary hearing.

The Attorney General maintains that the trial court correctly denied Soto's petition summarily because the " 'readily ascertainable facts from the record' " show that Soto's second degree murder conviction was not based on the felony-murder doctrine or the natural and probable consequences doctrine, rather solely on Soto's role as an aider and abettor of the killer, Garcia.

A. *Applicable Law*

"Senate Bill 1437, which took effect on January 1, 2019, 'addresses certain aspects of California law regarding felony murder and the natural and probable consequences doctrine[.]' [Citation.] Prior to Senate Bill 1437's enactment, a person who knowingly aided and abetted a crime, the natural and probable consequence of which was murder or attempted murder, could be convicted of not only the target crime but also of the resulting murder or attempted murder. [Citations.] 'This was true irrespective of whether the defendant harbored malice aforethought. Liability was imposed " 'for the criminal harms [the defendant] . . . naturally, probably, and foreseeably put in motion.' [Citations.]" [Citation.]' [Citation.] Aider and abettor liability under the natural and probable consequences doctrine was thus 'vicarious in

7

nature.' " (*People v. Munoz* (2019) 39 Cal.App.5th 738, 749 (*Munoz*), review granted on other grounds Nov. 26, 2019, S258234.)

"Senate Bill 1437 'redefined "malice" in section 188. Now, to be convicted of murder, a principal must act with malice aforethought; malice can no longer "be imputed to a person based solely on [his or her] participation in a crime." [Citation.]' [Citation.] Senate Bill 1437 also amended section 189, which defines first and second degree murder, by, among other things, adding subdivision (e). Under that subdivision, a participant in enumerated crimes is liable under the felony-murder doctrine only if he or she was the actual killer; or, with the intent to kill, aided and abetted the actual killer in commission of first degree murder; or was a major participant in the underlying felony and acted with reckless indifference to human life. [Citations.] Senate Bill 1437 thus ensures that murder liability is not imposed on a person who did not act with implied or express malice, was not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (*Munoz*, *supra*, 39 Cal.App.5th at pp. 749–750, fn. omitted; see also *People v. Lee* (2020) 49 Cal.App.5th 254, 260 (*Lee*).)

Senate Bill No. 1437 also added section 1170.95, which states that "[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when [specified] conditions apply." (§ 1170.95, subd. (a); see also § 1170.95, subd. (d)(3) [addressing resentencing "on the remaining charges"; § 1170.95, subd. (e) [addressing resentencing when "murder was charged generically[] and the target offense was not charged," by "redesignat[ing]" the murder conviction "as the target offense or underlying felony"].)

"To file the petition, all three of the following conditions must be met: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the

8

prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first or second degree murder following a trial . . . . [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to [s]ection 188 or 189.' " (*People v. Cornelius* (2020) 44 Cal.App.5th 54, 57, review granted Mar. 18, 2020, S260410.) The petition must include, among other things, a declaration stating that the petitioner "is eligible for relief under this section, based on all the requirements of subdivision (a)." (§ 1170.95, subd. (b)(1)(A).)

"Under subdivision (b)(2), a trial court may deny a petition without prejudice if the petition lacks any of the information required by subdivision (b)(1). [Citation.] In this 'initial review,' the trial court 'determines the facial sufficiency of the petition.' " (*People v. Drayton* (2020) 47 Cal.App.5th 965, 974 (*Drayton*).)

Section 1170.95, subdivision (c) (hereafter section 1170.95(c)), "contemplates a more substantive review by the trial court . . . . Section 1170.95(c) provides '[t]he court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response . . . and the petitioner may file and serve a reply . . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause.' " (*Drayton*, *supra*, 47 Cal.App.5th at pp. 974–975.)

"By its text, section 1170.95(c) thus requires the trial court to make two assessments. The first is whether the petitioner has made a prima facie showing of eligibility for relief. A petitioner is eligible for relief if he or she makes a prima facie showing of the three criteria listed in section 1170.95[, subdivision] (a)." (*Drayton*, *supra*, 47 Cal.App.5th at p. 975, italics omitted.) "The court's role at this stage is simply to decide whether the petitioner is ineligible for relief as a matter of law, making all

9

factual inferences in favor of the petitioner." (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 329 (*Verdugo*), review granted Mar. 18, 2020, S260493.)  "If the trial court determines a petitioner has made a prima facie showing of eligibility for relief, the court proceeds to the 'second' inquiry into the prima facie showing under section 1170.95(c). [Citation.]  In this second step, the trial [court] considers whether the petitioner has made a prima facie showing of entitlement to (rather than eligibility for) relief." (*Drayton*, at p. 976, italics omitted.)

     B.  *Analysis*

     The question presented here is whether the trial court correctly determined that Soto failed to make a prima facie showing of entitlement to relief under section 1170.95(c).[10]  Soto argues that the trial court improperly relied on this court's opinion when denying his petition because an "appellate opinion cannot be used to prove the circumstances of the crime."  We disagree that the trial court erred because, regardless of the trial court's reliance on the facts in this court's prior opinion to explain how the malice element of murder may have been satisfied at Soto's trial, the jury instructions themselves demonstrate as a matter of law that Soto could not make a prima facie showing that he is entitled to relief.

     Soto does not argue that it is improper for a trial court to rely on the jury instructions when determining whether the petitioner has made a prima facie showing of entitlement to relief under section 1170.95(c).  We agree that the trial court here could rely on the jury instructions, which are part of the record of conviction, in assessing the prima facie showings under section 1170.95(c).  (*People v. Edwards* (2020) 48

---

[10] Because the trial court appointed counsel for Soto, we do not address whether the trial court on this record could have summarily determined Soto was ineligible for relief without appointing counsel for him.  (See *Verdugo*, *supra*, 44 Cal.App.5th at pp. 332–333 [stating counsel need not be appointed for a petitioner who fails to make the initial prima facie showing required by section 1170.95(c)].)

Cal.App.5th 666, 674 (*Edwards*), review granted July 8, 2020, S262481.)[11]  The jury instructions given at a petitioner's trial may provide "readily ascertainable facts from the record" that refute the petitioner's showing, and reliance on them to make the eligibility or entitlement determinations may not amount to "factfinding involving the weighing of evidence or the exercise of discretion."  (See *Drayton*, *supra*, 47 Cal.App.5th at p. 980; see also *Verdugo*, *supra*, 44 Cal.App.5th at pp. 332–333.)  That is the case here.

As we will explain, the jury instructions in this case demonstrate, on their face and as a matter of law, that Soto was not and could not have been convicted of second degree murder under the natural and probable consequences doctrine.  This is so because the jurors were not provided any instruction on which they could have found Soto guilty of murder under that doctrine.  Rather, under the instructions, the jury necessarily found Soto culpable for murder based on his own actions and mental state as a direct aider and abettor of murder.

Soto acknowledges that his jury was not given a natural and probable consequences instruction for second degree murder.  However, Soto argues that, because the jury acquitted him of first degree murder but convicted him of second degree murder, and in light of the uncontested facts that Soto was the driver of the car and Garcia the shooter, the jury "must have relied on the 'natural and probable consequences' language in the implied malice murder instruction to convict Soto of second degree murder."  In light of his acquittal of aiding and abetting first degree murder, we assume arguendo that the jury concluded—as Soto maintains—that he did not harbor an intent to kill (i.e., express malice).  (See *People v. Soto* (2018) 4 Cal.5th 968, 976 (*Soto*) ["The primary

---

[11] The California Supreme Court granted review in *Edwards* and deferred the matter pending consideration and disposition of a related issue in *People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted Mar. 18, 2020, S260598.  In *Lewis*, the Supreme Court granted review on two questions:  "(1) May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95? [and] (2) When does the right to appointed counsel arise under Penal Code section 1170.95, subdivision (c)?" (*Ibid.*))

11

difference between express malice and implied malice is that the former requires an intent to kill but the latter does not."].)

Soto's argument rests on a similarity in the language in the jury instructions related to implied malice to those explaining the natural and probable consequence doctrine. As described above, the jury instruction defining implied malice stated "Malice is implied when: [¶] 1. The killing resulted from an intentional act, [¶] 2. The *natural consequences* of the act are dangerous to human life, and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life." (CALJIC No. 8.11, italics added.) The instruction for second degree murder also included this language when it defined the crime as an unlawful killing resulting from an intentional act, the "*natural consequences*" of which are "dangerous to human life" and which "was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life." (CALJIC No. 8.31, italics added.)

By contrast, the instruction for involuntary manslaughter included an instruction that Soto could be convicted of that crime as an aider and abettor, if the jury found, among other elements, "[t]he crime of involuntary manslaughter *was a natural and probable consequence* of the commission" of the crimes of grossly negligent discharge of a firearm, exhibiting a firearm, assault with a firearm, or assault (italics added). Crucially, the jury was not given a similar instruction for aiding and abetting the crime of murder, either first or second degree.

Although the instructions related to implied malice and the natural and probable consequences doctrine of aiding and abetting include similar language regarding a "natural consequence," they are distinctly different concepts. Implied malice is a mental state for the commission of the crime of second degree murder, either by the principal or as an aider and abettor (as was the case here for Soto) to murder. This distinction between direct aiding and abetting liability and natural and probable consequences doctrine is critical because potential relief under section 1170.95 extends only to those

12

convicted of murder by operation of the natural and probable consequence doctrine or of felony murder. (See § 1170.95, subd. (a) ["A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder convicted vacated."] Senate Bill No. 1437 changed the circumstances under which a person could be convicted of murder without a showing of malice, but it did not exclude from liability persons convicted of murder for acting with implied malice. (See *Lee*, *supra*, 49 Cal.App.5th at pp. 263–264.)[12]

The California Supreme Court has made clear that a "direct" aider and abettor must—at a minimum—share in the mens rea of the actual perpetrator, whereas an "indirect" aider and abettor (i.e., one whose liability is premised on the natural and probable consequences doctrine) need only intend to aid a different, less serious "target" crime, than the consequent crime. "A defendant is a *direct* aider and abettor if ' "he or she, (i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes, encourages or instigates the commission of the crime." ' [Citation.] *Indirect* liability of the aider and abettor, under the natural and probable consequences rule, is more complex, requiring a five-step process. The jury must find that 'the defendant (1) with knowledge of the confederate's unlawful purpose; and (2) with the intent of committing, encouraging, or facilitating the commission of any target

_____

[12] Although Soto argues that there is "no such crime as attempted implied malice murder" because implied malice is "similar to criminal negligence or general intent," he cites no case so holding. The California Supreme Court has previously rejected a contention that implied malice is the equivalent of general intent. (*People v. Whitfield* (1994) 7 Cal.4th 437, 450, overruled by statute on other grounds as stated in *People v. Mendoza* (1998) 18 Cal.4th 1114, 1126.) In any event, Soto does not explain how his assertion would entitle him to relief under section 1170.95, the applicability of which extends only to those "convicted of felony murder or murder under a natural and probable consequences theory." (§ 1170.95, subd. (a).)

crime(s); (3) aided, promoted, encouraged, or instigated the commission of the target crimes.' [Citation.] The jury must also find that '(4) the defendant's confederate committed an offense other than the target crime(s); and . . . (5) the offense committed by the confederate was a natural and probable consequence of the target crime(s) that the defendant encouraged or facilitated.' " (*People v. Chiu* (2014) 59 Cal.4th 155, 171–172 (conc. & dis. opn. of Kennard, J. (*Chiu*)); see also *id*. at pp. 158–159, 161–162.)

Stated differently, "We have described the mental state required of an aider and abettor as 'different from the mental state necessary for conviction as the actual perpetrator.' [Citation.] The difference, however, does not mean that the mental state of an aider and abettor is less culpable than that of the actual perpetrator. On the contrary, outside of the natural and probable consequences doctrine, an aider and abettor's mental state must be at least that required of the direct perpetrator." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117–1118.) The court concluded, "What this means here, when the charged offense and the intended offense—murder or attempted murder—are the same, i.e., when guilt does not depend on the natural and probable consequences doctrine, is that the aider and abettor must know and share the murderous intent of the actual perpetrator." (*Id*. at p. 1118.)

For implied malice murder, that intent is that the perpetrator " 'knows that his conduct endangers the life of another and . . . acts with conscious disregard for life.' " (*Soto*, *supra*, 4 Cal.5th at p. 974.) The "physical act" required for implied malice murder "is satisfied by the performance of 'an act, the natural consequences of which are dangerous to life.' " (*Ibid*.)

The natural and probable consequence doctrine, by contrast, is a theory of liability by which an aider and abettor who intends to aid a less serious crime can be convicted of a greater crime. This doctrine comes into play when "an accomplice assists or encourages a confederate to commit one crime, and the confederate commits another, more serious crime (the nontarget offense)." (*People v. Prettyman* (1996) 14 Cal.4th

14

248, 259 (*Prettyman*).) Applying the natural and probable consequences doctrine, "a defendant may be held criminally responsible as an accomplice not only for the crime he or she intended to aid and abet (the target crime), but also for any other crime that is the 'natural and probable consequence' of the target crime." (*Id.* at p. 261.) Unlike aiding and abetting implied malice murder, which requires the aider and abettor to (at least) share the mental state of the actual perpetrator of implied malice murder, " 'aider and abettor culpability under the natural and probable consequences doctrine is not premised upon the intention of the aider and abettor to commit the nontarget offense [e.g., murder] because the nontarget offense was not intended at all.' " (*Chiu*, *supra*, 59 Cal.4th at p. 164.)

Thus, liability for an aider and abettor under the natural and probable consequences doctrine is tied, first, to the perpetrator's commission of the less serious target crime and then, inferentially, to the ultimate crime of conviction. In *Prettyman* (which was issued prior to Soto's trial), the California Supreme Court held "when the prosecution relies on the 'natural and probable consequences' doctrine to hold a defendant liable as an aider and abettor, the trial court must, *on its own initiative*, identify and describe for the jury any target offense allegedly aided and abetted by the defendant." (*Prettyman*, *supra*, 14 Cal.4th at p. 268.)

Soto's jury was not instructed on any target crime upon which second degree murder based on a natural and probable consequences theory could be predicated.[13] Soto was therefore convicted as a direct aider and abettor to second degree murder. The "natural consequences" language in the instruction for second degree murder does not

---

[13] As discussed *ante*, the jurors were only instructed regarding aiding and abetting of non-murder target crimes in the instruction on involuntary manslaughter. In addition, the jurors were instructed that if they had "reasonable doubt whether the crime is murder or manslaughter, [they] must give the defendant the benefit of such doubt and find it to be manslaughter rather than murder." Thus, the jurors presumably did not have a reasonable doubt as to whether Soto was culpable for murder when they returned the second degree murder conviction, not involuntary manslaughter.

transform Soto's conviction into one for murder under the natural and probable consequences doctrine within the meaning of section 1170.95. (See *Edwards*, *supra*, 48 Cal.App.5th at p. 674; see also *People v. Martinez* (2007) 154 Cal.App.4th 314, 334.)

For these reasons, we conclude Soto did not make a prima facie showing that he is entitled to relief under section 1170.95 because the jury instructions given at his trial conclusively demonstrate as a matter of law that he was not convicted of murder under a natural and probable consequences theory or of felony murder. (§ 1170.95, subd. (a).) Therefore, the trial court did not err when it summarily denied his petition under section 1170.95(c).

## III.  DISPOSITION

The trial court's November 15, 2019 order is affirmed.

_____

Danner, J.

WE CONCUR:

_____

Greenwood, P.J.

_____

Grover, J.

**H047581**
***People v. Soto***

| Trial Court: | Santa Clara County Superior Court, Case No.: 185328 |
|---|---|
| Trial Judge: | Hon. Kenneth Paul Barnum |
| Attorney for Defendant/Appellant Martin Soto: | Paul Couenhoven under appointment by the Court of Appeal |
| Attorneys for Plaintiff/Respondent The People: | Xavier Becerra Attorney General of California John H. Deist Deputy Attorney General |

**H047581**
*People v. Soto*